## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

IN SEARCH OF AMELIA EARHART LLC,

      **Plaintiff,**

vs.                                                                 No. CIV-02-172 JP/RLP

OCEANWORKERS DISCOVERY, INC.,
OCEANWORKERS CO., KENNETH D.
COLLINS, and RONALD WALROD

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

On August 23, 2002, Defendant Ronald Walrod filed a Motion to Dismiss for Lack of

Personal Jurisdiction.  (Doc. No. 20).  After a careful reading of the briefs and the relevant law,

this Court concludes that Defendant Walrod's motion to dismiss based on lack of personal

jurisdiction should be denied.

I.      **Background**

Plaintiff In Search of Amelia Earhart ("ISAE") is a Wyoming limited liability company

with its offices and principal place of business in New Mexico.  Defendant OceanWorkers

Discovery, Inc., ("OWDI") is a California corporation; Defendant OceanWorkers Co. ("OWCO")

is a California entity; and Defendants Kenneth Collins and Ronald Walrod are California residents.

This case arises out of contract negotiations between          ISAE and Defendants involving the

refitting of an undersea vehicle to be used in a search project to recover Amelia Earhart's missing

aircraft.

During the negotiations concerning this search project, Defendant Walrod acted as an

advisor to his friend Defendant Collins.  On October 3, 2001, Defendant Walrod met with

Defendant Collins, R. Michael Kammerer, Jr. (ISAE's founder and promoter), and Mr.

Kammerer's associate in San Diego, California, to discuss contract terms.  After this meeting and

in response to Mr. Kammerer's invitation, Defendant Walrod and Defendant Collins traveled to

New Mexico on October 29, 2001, and stayed with Mr. Kammerer at Mr. Kammerer's residence

in Santa Fe.  Defendants Walrod and Collins stayed the night in New Mexico and left on October

30, 2001.  During this trip to New Mexico, Defendants Walrod and Collins discussed the search

project and contract terms with Mr. Kammerer.  By the end of the New Mexico trip, the parties

had reached a substantial agreement on contract terms for the project.

Additionally, during Defendants Walrod's and Collins' stay in New Mexico, Defendant

Walrod told Mr. Kammerer that the project needed a schedule, budget, interfaces, and lines of

responsibility.  Defendant Walrod suggested to Mr. Kammerer that the project should have a

manager to organize the project.  Defendant Walrod and Mr. Kammerer discussed having

Defendant Walrod send a proposal to Mr. Kammerer regarding the possibility of Defendant

Walrod serving as project manager for the search project.

On October 31, 2001, after having returned to California from New Mexico, Defendant

Walrod faxed Mr. Kammerer, in New Mexico, a proposal in which Defendant Walrod pitched

himself as a potential manager for the project.  In this fax, Defendant Walrod set forth his

qualifications and his self-described "technical and managerial expertise" on the Ocean Operations

component of the project.  Defs.' Reply in Supp. of Mot. to Dismiss Def. Walrod for Lack of

Personal Jurisdiction, Ex. 2 at 1.  Although Mr. Kammerer rejected Defendant Walrod's proposal

to act as project manager, as the project progressed, Defendant Walrod continued to discuss the

search project with Defendant Collins.

2

On November 8, 2001, a little more than a week after Defendants Walrod and Collins returned to California from New Mexico, ISAE and OWDI negotiated and signed a letter agreement regarding the search project.  In early January 2002, Defendant Walrod met with Defendant Collins and Mr. Kammerer's son in California where they discussed the status of ISAE's and OWDI's relationship and ISAE's desire to amend the agreement.  On January 28, 2002, ISAE and OWDI negotiated and signed an amendment to the November 8, 2001 agreement.

Subsequently, Plaintiff ISAE filed suit against Defendants alleging, among other things, claims for misrepresentation, fraud, and breach of contract.  On August 23, 2002, Defendant Walrod filed a Motion to Dismiss for Lack of Personal Jurisdiction.

II.     **Discussion**

The standard governing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well-established.  A plaintiff has the burden of proving personal jurisdiction.  <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1091 (10th Cir. 1998).  When a motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing of jurisdiction.  <u>Far West Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1075 (10th Cir. 1995).  The trial court must consider the affidavits in the light most favorable to the plaintiff, even if the parties present conflicting affidavits.  <u>Id.</u>; <u>Behagen v. Amateur Basketball Ass'n</u>, 744 F.2d 731, 733 (10th Cir. 1984).  Jurisdiction is determined by the law of the forum state.  <u>Yarbrough v. Elmer Bunker and Associates</u>, 669 F.2d 614, 616 (10th Cir. 1982).

New Mexico courts apply a three-part test to determine whether personal jurisdiction exists over a non-resident defendant:  (1) the defendant's acts must be enumerated in New Mexico's long-arm statute; (2) plaintiff's cause of action must arise from the acts; and (3) the defendant's acts must establish minimum contacts to satisfy constitutional due process concerns. Doe v. Roman Catholic Diocese of Boise, Inc., 121 N.M. 738, 742, 918 P.2d 17, 21 (Ct. App. 1996).  New Mexico's long-arm statute provides in relevant part:

> A.  Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from: (1) the transaction of any business within this state; . . . (3) the commission of a tortious act within this state; . . . .

N.M. Stat. Ann. § 38-1-16(A).  New Mexico courts have repeatedly equated the transaction of business and the commission of a tortious act requirements of section 38-1-16(A) with the due process requirement of minimum contacts.  See Wesley v. H & D Wireless Ltd. Partnership, 678 F.Supp. 1540, 1542 (D.N.M. 1987); F.D.I.C. v. Hiatt, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994) ("Because we have interpreted the long-arm statute as extending our personal jurisdiction as far as constitutionally permissible, it is not necessary to determine whether [defendants] transacted business within New Mexico in any technical sense.") (internal citations omitted); Telephonic, Inc. v. Rosenblum, 88 N.M. 532, 534, 543 P.2d 825, 827 (1975); CABA, Ltd. Liability Co., v. Mustang Software, Inc., 127 N.M. 556, 560-61, 984 P.2d 803, 807-08 (Ct. App. 1999); Tarango v. Pastrana, 94 N.M. 727, 728, 616 P.2d 440, 441 (Ct. App. 1980).  Therefore, this Court will first address whether Defendant Walrod had sufficient minimum contacts with New Mexico to satisfy due process.

Under the United States Supreme Court's standard for determining whether personal jurisdiction exists over a defendant, this Court may exercise personal jurisdiction over a nonresident defendant only if there are minimum contacts between the defendant and the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). There must be sufficient minimum contacts with New Mexico so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Moreover, the defendant must have purposefully availed himself of the privilege of conducting activities within New Mexico. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). Among other things, the court examines the degree to which the defendant has purposefully initiated his activity within the state. Doe v. Roman Catholic Diocese of Boise, Inc., 121 N.M. at 743, 918 P.2d at 22. This purposeful activity requirement assumes that a defendant will not be subject to personal jurisdiction solely as a result of random, fortuitous, or attenuated contacts. Id.

In this case, Defendant Walrod's contacts with New Mexico were neither random, fortuitous, nor attenuated. Defendant Walrod voluntarily and purposefully traveled to New Mexico to discuss the ongoing contract negotiations for the search project with Defendant Collins and Mr. Kammerer. Defendant Walrod admits that, during his stay in New Mexico, he talked about the search project and contract terms. In addition, Defendant Walrod acknowledges that, while in New Mexico, he gave his opinion on the project's schedule, budget, interfaces, and lines of responsibility. Moreover, during this trip, Defendant Walrod personally solicited business for himself when he discussed his potential role as a project manager. While in New Mexico, Defendant Walrod also solicited business for OWDI.

5

Defendant Walrod subjected himself to the jurisdiction of this Court when he conducted business activity in New Mexico. Even a single, physical, in-state contact can be sufficient to support the exercise of personal jurisdiction. See American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, 710 F.2d 1449, 1452-53 (10th Cir. 1983) (holding that a Dutch journalist's presence in Utah, while he investigated a land-sales scheme and during which he allegedly slandered a California corporation, was a sufficient minimum contact to support personal jurisdiction); Santa Fe Technologies, Inc. v. Argus Networks, Inc., 131 N.M. 772, 783, 42 P.3d 1221, 1232 (Ct. App. 2001) (holding that a single physical, in-state contact in New Mexico, combined with other business interactions, was enough for the defendants to reasonably anticipate being haled into New Mexico courts). By traveling to New Mexico, conducting business negotiations in New Mexico, and soliciting business for himself and for OWDI in New Mexico, Defendant Walrod engaged in sufficient contacts with New Mexico for Defendant Walrod reasonably to anticipate being haled into a New Mexico court. Thus, Defendant Walrod's acts establish the minimum contacts necessary to satisfy constitutional due process concerns.

The fairness in exercising personal jurisdiction over Defendant Walrod is further supported by the fact that Defendant Walrod purposefully sent a fax to Mr. Kammerer in New Mexico, in which Defendant Walrod proposed that he serve as the manager for the search project. Defendant Walrod contends that sending a fax to New Mexico is not enough to satisfy due process standards. See Wesley, 678 F.Supp. at 1542; CABA, 127 N.M. at 563-64, 984 P.2d at 810-11. This Court agrees with the principle set forth in CABA and Wesley that generally the use of mail, telephones, faxes, and other communications do not constitute the minimum contacts required by due process. However, this case presents a markedly different factual scenario than both Wesley

and CABA.  Here, Defendant Walrod not only sent a fax to New Mexico to solicit business from a New Mexico resident, but Defendant Walrod also participated in business negotiations in New Mexico while he was physically present in New Mexico.  The Court concludes that Defendant Walrod had sufficient minimum contacts with New Mexico to satisfy due process.[1]

Defendant Walrod also claims that he did not transact business in New Mexico because his involvement in this case was as a mere advisor, with no financial stake in the transaction.  This argument, however, is without merit.  Under New Mexico law, "business" is defined not only as a commercial venture, but also as an activity that engages a person's "serious attentions."  See Benally v. Amon Carter Museum of Western Art, 858 F.2d 618, 623 (10th Cir. 1988).  A person "transacts business" within the meaning of New Mexico's long-arm statute whenever he engages in activities designed to further his purposes, objectives, or goals.  Id.  Given the broad meaning ascribed to "transaction of business" under New Mexico law, Defendant Walrod's acts of conducting contract negotiations for OWDI and of proposing himself as a project manager for the search project while in New Mexico meet the transaction of business requirement under the New Mexico long-arm statute.

Furthermore, Defendant Walrod's contacts with New Mexico are sufficient to constitute the commission of a tortious act in New Mexico under the New Mexico long-arm statute.  Among other things, Plaintiff brings claims against Defendant Walrod for tortious

---

[1]Plaintiff also argues that, because Defendant Walrod allegedly acted in concert and conspiracy with Defendants OWDI, OWCO, and Collins, the contacts of Defendants OWDI, OWCO, and Collins can be imputed to Defendant Walrod.  Because this Court finds that Defendant Walrod's own personal contacts with the State of New Mexico are sufficient to satisfy due process, this Court will not address whether the actions of Defendants OWDI, OWCO, and Collins may be imputed to Defendant Walrod for purposes of establishing personal jurisdiction over Defendant Walrod.

misrepresentation and fraud, based on Defendant Walrod's representations made during the

course of contract negotiations between ISAE and OWDI.  Defendant Walrod admits that he

engaged in contract negotiations concerning the search project while in New Mexico.  Moreover,

Mr. Kammerer, in his affidavit, asserts that Defendant Walrod made representations to him, on

which Mr. Kammerer relied, regarding Defendants Walrod's and Collins' qualifications, the

undersea vehicle's search capabilities, the project's cost, and the project's expected timetable.

Kammerer Aff. ¶¶ 12-16.  In Plaintiff's complaint, Plaintiff specifically alleges that Defendants

falsely represented the costs of the search project and the search capabilities of the undersea

vehicle.  See Amended Complaint ¶¶ 16-17.  Viewing the evidence in the light most favorable to

Plaintiff, this Court determines that Plaintiff has made a prima facie showing that Defendant

Walrod committed tortious conduct within the State of New Mexico and within the meaning of New Mexico's long-arm statute.[2]

The remaining prong of New Mexico's three-part test for determining whether personal jurisdiction exists over a non-resident defendant is whether the plaintiff's cause of action arises from defendant's acts performed in New Mexico. The "arising from" prong requires only that the plaintiff's claim lies in the wake of the activities by which the defendant submitted to the jurisdiction of the court. State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 245, 784 P.2d 986, 988 (1989). In other words, there must be a close relationship between the defendant's acts and the plaintiff's claims. Id.

In this case, Plaintiff asserts claims, among others, for misrepresentation, fraud, and breach of contract. As previously mentioned, Mr. Kammerer, in his affidavit, alleges that Defendant Walrod made representations to him regarding Defendants Walrod's and Collins' qualifications, the undersea vehicle's search capabilities, the project's cost, and the project's expected timetable.

---

[2]Defendant Walrod disputes that he made any representations to Mr. Kammerer about the project's costs or about the undersea vehicle's search capabilities. Defendant Walrod claims that he was not involved in, nor did he have any information about, either of these aspects of the project. However, in reviewing Defendant Walrod's motion to dismiss for lack of personal jurisdiction, this Court must view the pleadings and affidavits in the light most favorable to Plaintiff. Therefore, looking at the affidavits and pleadings in Plaintiff's favor, this Court accepts as true Plaintiff's contention that Defendant Walrod made representations to Mr. Kammerer about the project's costs and the undersea vehicle's search capabilities. Moreover, Defendant Walrod's assertions that he did not have information about the project's costs or the search capabilities of the undersea vehicle are doubtful, given that Defendant Walrod, in his faxed proposal to Mr. Kammerer, stated that the Ocean Operations component of the search project was "well within [Defendant Walrod's] technical and managerial expertise." Def.'s Reply in Supp. of Mot. to Dismiss Def. Walrod for Lack of Personal Jurisdiction, Ex. 2 at 1. In addition, the fact that Defendant Walrod was able to pitch himself as a potential candidate for the project manager position a mere one day after his return from New Mexico belies Defendant Walrod's claims of ignorance regarding the project's costs and the undersea vehicle's search capabilities.

Kammerer Aff. ¶¶ 12-16.  These representations, which were made during the course of business negotiations in New Mexico on October 29-30, 2001, played a part in the subsequent out-of-state agreement executed on November 8, 2001.  See Amended Complaint ¶¶ 16-17.  Because of the role the New Mexico negotiations played in leading to the November 8, 2001 agreement, Plaintiff's cause of action "lies in the wake" of Defendant Walrod's transaction of business in New Mexico.  See Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1215-16 (7th Cir. 1984) (holding that, where discussions in Illinois played a part in the subsequent out-of-state negotiations, the Illinois court had personal jurisdiction over the defendant, because the breach of warranty claim arising from those negotiations "lies in the wake of" defendant's activities in Illinois).  Plaintiff's claims for misrepresentation, fraud, and breach of contract are closely related to the negotiations between Defendant Walrod and Mr. Kammerer in New Mexico.  Because Plaintiff's cause of action arises from Defendant Walrod's acts that were performed in New Mexico, the exercise of personal jurisdiction is proper in this case.  See State Farm Mut. Ins. Co. v. Conyers, 109 N.M. at 245, 784 P.2d at 988 (holding that the purchasing of insurance in New Mexico is a sufficient contact for the court to exercise personal jurisdiction over the defendants).

Defendant Walrod's acts in New Mexico fall within the transaction of business and commission of a tortious act sections of New Mexico's long-arm statute.  Plaintiff's cause of action arises from Defendant Walrod's acts committed in New Mexico.  Furthermore, Defendant Walrod's acts in New Mexico establish sufficient minimum contacts to satisfy constitutional due process concerns.  Consequently, this Court has personal jurisdiction over Defendant Walrod, and Defendant Walrod's motion to dismiss for lack of personal jurisdiction should be denied.

IT IS THEREFORE ORDERED that the Motion to Dismiss Defendant Walrod for Lack of Personal Jurisdiction (Doc. No. 20) is DENIED.

_____

CHIEF UNITED STATES DISTRICT JUDGE